UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br><br>MARJORIE Y. EVANS,<br><br>          Debtor | Chapter 7<br>Case No. 17-40402-CJP |
| MARJORIE Y. EVANS,<br><br>          Plaintiff<br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>          Defendant | Adv. Pro. No. 17-04015-CJP |

**BENCH RULING[1] ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the *Plaintiff's Motion for Summary Judgment* [Dkt. No. 193] filed by the debtor-plaintiff Marjorie Y. Evans and the *Defendant's Motion for Summary Judgment* [Dkt. No. 186] filed by the defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"), which will be referred to collectively in this Order as the "Motions." Pursuant to the Motions, both parties request judgment in their favor with respect to Evan's first amended complaint [Dkt. No. 70] (the "Complaint"), in which she requests sanctions against Freddie Mac for willful violation of the automatic stay under 11 U.S.C. § 362(k) relating to service of certain 48-hour notices of eviction in order to levy on an execution issued by the Housing Court and the

---

[1] This Bench Ruling constitutes the record decision. As a general matter, I issue written bench rulings to facilitate the timely determination of matters. The bench ruling format is less formal than a written "Memorandum of Decision" or "Opinion" and is intended to explain the basis for my decision in resolving a matter. It is not intended for publication.

1

filing of a motion to reissue an execution with the Housing Court.[2] For the reasons below, I deny the Defendant's Motion and deny in part and grant in part the Plaintiff's Motion.

**Applicable Legal Standards**

The United States Court of Appeals for the First Circuit has described the standard for entry of summary judgment as follows:

> "[W]e must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although we view the evidence in the light most favorable to the nonmovant, [a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."

*McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 31 (1st Cir. 2001) (quotations and citations omitted). The same standard is employed for cross-motions for summary judgment, but each motion is viewed "separately, drawing all inferences in favor of the nonmoving party." *Fadili v. Deutsche Bank Nat'l Trust Co.*, 772 F.3d 951, 953 (1st Cir. 2014) (citation omitted).

"The automatic stay is among the most basic of debtor protections under bankruptcy law[,]" *Soares v. Brockton Credit Union*, 107 F.3d 969, 975 (1st Cir. 1997) (citations omitted), and is "extremely broad in scope[,]" *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 121, 129 (1st Cir. 2019) (citations and quotations omitted). Pursuant to § 362(a)(1), "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been

---

[2] In an order denying a motion to dismiss that had been filed with respect to the Complaint, I determined that "[s]ince the stay terminated as a matter of law as of that date [11:59 p.m. on April 7, 2017], the scope of the § 362(k) claim is limited to acts alleged to have been tak[en] by or on behalf of [Freddie Mac] on or prior to April 7, 2107." *See* Ord. [Dkt. No. 103]. Discovery and trial phases regarding liability and damages in this adversary proceeding are bifurcated, so the issues at this juncture are limited to the Defendant's potential liability and the scope of liability has been narrowed in time. *See* Ord. [Dkt. No. 148].

2

commenced before the commencement of the case" violates the stay. 11 U.S.C. § 362(a)(1). Section 362(a)(3) also stays actions to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id*. § 362(a)(3).

Section 362(k) offers debtors a remedy for willful violations of the automatic stay, providing that "an individual injured by any willful violation of stay . . . shall recover actual damages including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id*. § 362(k)(1). "'A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation.'" *In re Silk*, 549 B.R. 297, 300–01 (Bankr. D. Mass. 2016) (quoting *In re Panek*, 402 B.R. 71, 76 (D. Mass. 2009)). "A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *Laboy v. Doral Mortg. Corp. (In re Laboy)*, 647 F.3d 367, 374 (1st Cir. 2011) (quoting *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act that violates the stay. *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).

There are two avenues to establish a stay violation: (i) first, by demonstrating that a *per se* violation has been committed, where an act directly disregards the injunction in § 362(a), and (ii) second, by demonstrating that an act constituted a threat to contravene the relief afforded under § 362(a), where the surrounding circumstances support an inference that the act was intended to revive financial pressures on a debtor or coerce or harass a debtor, rather than preserve the status quo. *See generally In re Rellstab*, 622 B.R. 495, 499–501 (Bankr. D. Mass. 2020) (evaluating whether postponement of a foreclosure sale violated the automatic stay and

3

determining that "postpone[ement] of the date of a foreclosure sale is not a *per se* violation of any of the automatic stay provisions of § 362(a)[, but rather] an act that, without more, merely maintains the status quo between the parties[,]") (citing *Martir Lugo v. De Jesus Saez (In re De Jesus Saez)*, 721 F.2d 848, 853 (1st Cir. 1983) (concluding that the mortgagee "did little more than reschedule the auction and advertise the new date from the time he learned of the petition until its dismissal" and reasoning that the rescheduling was a preparatory act which does not violate the stay, absent a further showing of harassment or conduct that financially pressures the debtor); *Witkowski v. Knight (In re Witkowski)*, 523 B.R. 291, 299–300 (B.A.P. 1st Cir. 2014*), abrogated on other grounds by Smith v. Me. Bureau of Revenue Services (In re Smith)*, 910 F.3d 576 (1st Cir. 2018); *In re Hart*, 246 B.R. 709, 740 n.29 (Bankr. D. Mass. 2000) ("[T]he Court can conceive of circumstances in which postponement of a foreclosure sale may violate the automatic stay.  For example, if a secured party repeatedly continued the foreclosure sale for brief periods, it is conceivable that harassment rather than the preservation of the status quo would be motivating the creditor and warrant judicial intervention.")).

**Discussion**

After considering the summary judgment record, material disputed facts exist as to the actions of agents of Freddie Mac on April 6, 2017, when a constable arrived to serve and levy on the execution issued by the Housing Court at the property in which Evans retained a bare possessory interest[3] and then when the constable attempted to serve  Evans with a new 48-hour

---

[3] A debtor's mere possessory interest in premises, "even an allegedly wrongful one," is protected by the automatic stay.  *In re Sullivan*, 551 B.R. 868, 869 (Bankr. D. Mass. 2016) (determining that "even while a foreclosure and sale to a third party removes real property from the bankruptcy estate so that the automatic stay would not apply to actions with respect to such property, an attempt to deprive the debtor of her possessory interest in the property (even an allegedly wrongful one) remains subject to the stay. That is because a debtor's bare possessory interest in realty is property of the estate that is protected by the automatic stay even if the realty itself is not property of the estate") (quotations and citations omitted)).

4

notice of eviction after receiving notice of the filing of Evans's bankruptcy petition. I have carefully reviewed the video evidence in the record of the attempt to serve the updated 48-hour notice of eviction on Evans, but a portion of the video contains audio that is undiscernible. While Evans disputes various statements of material fact, she has not provided an affidavit or citation to the record to support certain of her assertions of fact that conflict with the evidence presented by Freddie Mac. For example, Evans describes conduct of the constable broadly and states that he made certain statements that cannot be verified on the video. Because she is an unrepresented party, I have given Evans more latitude regarding the summary judgment record and have considered certain statements that she has made in argument as an offer of proof regarding her testimony. In assessing the constable's actions and the actions of the movers on April 6, 2017, it would be necessary for me to assess the credibility of witnesses as to what the constable said in his interactions with Evans where he cannot be clearly heard on the video, when the constable and movers received notice of the bankruptcy, and the timing of when the constable and movers arrived and left. The parties also dispute other facts that could be material, including how long the constable and movers remained at the premises and their interactions with the debtor and whether such actions could be viewed as maintaining the status quo.

With respect to service of the 48-hour notice of eviction, there is no dispute that the agents of Freddie Mac had been informed of Evans's bankruptcy at some point after arriving at the Property and, after receiving notice, the constable served the statutorily required 48-hour notice of eviction prior to obtaining relief from stay. Def. Statement of Undisputed Facts ¶¶ 53–54. It is not disputed that, at the direction of counsel, the constable made handwritten changes to a copy of the 48-hour notice that had been previously served on Evans to replace the April 6 date with April 11, 2017. I must decide whether service itself of the revised notice of eviction

pursuant to Mass. Gen. Laws ch. 239, § 3,[4] without any further conduct by Freddie Mac's agents, constitutes a *per se* violation of the stay or whether service should be viewed as an effort to maintain the status quo, whereby the circumstances surrounding the conduct must be further examined in order to determine whether inferences could be drawn that Freddie Mac attempted to revive financial pressures on or coerce or harass Evans. If it is the former, the existence of disputed material facts about the conduct of Freddie Mac's agents does not matter and summary judgment should be granted to Evans as a matter of law, but if it is the latter, the circumstances of the conduct, with respect to which there are material disputes, would be relevant.

In this case, Freddie Mac maintains that service of the updated notice of eviction did nothing more than maintain the status quo in order for Freddie Mac to "confirm the stay was not

---

[4] The eviction process in Massachusetts has been described as follows:

> "If the judge concludes that the landlord is entitled to possession of the property and the ten-day window passes without a notice of appeal being filed, the landlord may obtain an execution authorizing a sheriff or constable to serve the tenant with forty-eight hours' notice of eviction. G. L. c. 239, §§ 3, 5 (a). Once these forty-eight hours have expired, a tenant and his or her possessions may be physically removed from the property. G. L. c. 239, § 3."

*Adjartey v. Cent. Div. of Hous. Ct. Dep't*, 120 N.E.3d 297, 305–06 (Mass. 2019). Mass. Gen. Laws ch. 239, § 3 provides:

> "Except as hereinafter provided, if the court finds that the plaintiff is entitled to possession, he shall have judgment and execution for possession and costs, and, if rent is claimed as provided in section two and found due, the judgment and execution shall include the amount of the award. If the plaintiff becomes nonsuit or fails to prove his right to possession, the defendant shall have judgment and execution for costs.
>
> At least forty-eight hours prior to serving or levying upon an execution issued on a judgment for the plaintiff for possession of land or tenements rented or leased for dwelling purposes, the officer serving or levying upon the execution shall give the defendant written notice that at a specified date and time he will serve or levy upon the execution and that at that time he will physically remove the defendant and his personal possessions from the premises if the defendant has not prior to that time vacated the premises voluntarily."

Mass. Gen. Laws ch. 239, § 3.

in effect due to Evan's Motion to Cancel, its expiration by statute, an Order based on the Order to Show Cause issued by the Court regarding an apparent violation of 11 U.S.C. 109(g), or to obtain relief from the automatic stay" and that service was not an "action for the purpose of enforcing the Execution issued by the Housing Court, obtaining possession or exercising control over the Property, harassing, bullying, threatening or intimidating Evans or engaging in any other conduct that could be interpreted as a violation of the automatic stay while the stay remained in place." Def. Statement of Undisputed Facts ¶¶ 57-59. Evans asserts that service of the notice, alone, constituted a violation of the automatic stay.

Service of an initial 48-hour notice of the intent to evict with a copy of the judgment and execution would violate the automatic stay where the creditor had notice of the bankruptcy case.[5] To determine the Motions, I must consider whether service of the 48-hour notice in this case, where a prior notice had been served, is more like a "postponement" that preserves the status quo or an act that is stayed under § 362(a). Upon consideration of the undisputed facts in the record, I conclude that service of the 48-hour notice was not an act to preserve the status quo, but rather constituted an independent act statutorily necessary to take future action to execute on the judgment for eviction.

Postponement of a publicly noticed foreclosure sale announced at or before the time of a foreclosure auction preserves the status quo because without such a pronouncement, the noticing process would need to be restarted, and the parties are essentially in the same positions as they were prior to the postponement announcement. *See, e.g., Fitzgerald v. First Nat. Bank of*

---

[5] Another court in this District has held that service of a notice of eviction did constitute a *per se* stay violation, finding that a "[c]reditor's act of instructing the constable through counsel to serve the 48 hour eviction notice on the Debtor and the constable's subsequent service of the notice constitute a violation of the automatic stay" where a stay relief hearing had been held, but the order granting relief from stay had not yet entered. *In re Kim*, 554 B.R. 304, 313 (Bankr. D. Mass. 2016).

*Boston*, 46 Mass. App. Ct. 98, 100 (1999) (determining "[i]t has long been accepted practice in Massachusetts that, while details of the initial auction must be provided by written notice to the appropriate parties and published in a newspaper . . . a postponement of the sale may be announced by public proclamation to those present at the auction site . . . ."); *see also In re Rellstab*, 622 B.R. at 499–501 (collecting cases). With respect to the 48-hour notice of eviction, while appearing to be similar in some ways to postponement of a foreclosure auction, the statutory scheme is materially different and serving a new 48-hour notice is not the same as announcing a postponement of a public auction. In this case, the constable had served a 48-hour notice of the creditor's intent to execute its judgment for possession on April 3, 2017. Def. Appx. Ex. M [Dkt. No. 189]. That notice stated that the Debtor would be evicted on April 6, 2017. After arriving at the Property and receiving notice of the bankruptcy, the constable appropriately communicated with counsel to Freddie Mac to obtain further instructions. At that time, Freddie Mac could have instructed the constable to leave the Property. The eviction could not occur on that date because of the automatic stay. The statutory scheme did not require a "postponement" or any preservation of public notices that had been given to comply with the statutory scheme as would a foreclosure sale. If Freddie Mac was permitted to execute on its judgment for possession because it obtained relief from the automatic stay or the stay expired, it would have to serve a new 48-hour notice to comply to comply with Massachusetts law. Unlike a foreclosure, no public notice or advertising is required to execute on a judgment for possession. By marking up or purporting to "amend" the form of 48-hour notice to establish a new date for the eviction and serving that on the debtor while the automatic stay was in place, Freddie Mac violated the automatic stay because it took an act to issue new process that furthered the eviction action, enforce a prepetition judgment against the debtor or property of the estate, and to obtain possession of the Property which at that time was subject to a possessory interest that constituted

8

property of the estate. Service of the new 48-hour notice by Freddie Mac is no different from serving a first 48-hour notice after receiving notice of the bankruptcy filing and is different from postponing a public foreclosure auction. Violation of the automatic stay is not mitigated by fact that Freddie Mac may have also had a good faith belief that (i) it was entitled to relief from the automatic stay and intended to seek such relief or (ii) the debtor's bankruptcy case was likely to be dismissed or the stay would expire at 11:59 p.m. on April 7, 2017. *Compare In re Rellstab*, 622 B.R. at 500–01 (stating "this Court does not read § 362(a)(1) to require that a mortgagee seek relief from the automatic stay in all cases immediately after first postponing an auction date post-petition or prior to subsequent postponements, as long as the purpose of a postponement is only to maintain the status quo where the mortgagee has a good faith belief that it is entitled to relief from the automatic stay and intends to seek such relief to foreclose its mortgage").

The automatic stay is an important safeguard provided by the Bankruptcy Code. *See, e.g., Soares*, 107 F.3d at 975. Freddie Mac took a risk by instructing the constable to serve a new 48-hour notice. It appears from the record that Freddie Mac took that risk because it perceived that it was preserving the status quo because its execution would expire on April 11, 2017, and it appears that Freddie Mac would have been required to obtain a new execution or begin the eviction process again.[6] The fact that Freddie Mac perceived that it might have to

---

[6] Once an execution is issued by the court, it typically remains valid for recovery of possession for a ninety-day period only.

> If the court does not issue the execution for possession within ninety days, or the plaintiff does not use the execution within ninety days of its issuance, the execution is stale and cannot be reissued; the plaintiff's remedy is to bring a new action. See Lewey v. Chelsea Dist. Ct., No. 88-304 (Mass. 1988) (O'Connor, J.); Vandi v. Boston Hous. Auth., No. 2000-J531 (Mass. App. Ct. 2000) (Duffly, J.); Maple Commons Assocs. LP v. Perez, No. 06-SP-4326 (Boston Housing Ct. Aug. 27, 2007) (Muirhead, J.); Burns v. Gibbons, No. 02-SP-0832 (Boston Housing Ct. Mar. 31, 2003) (Pierce, J.); Jones v. Gonzalez, No. 95-SP-02922 (Boston Housing Ct. Jan. 3, 1996) (Winik,

employ further process in the eviction action to preserve its execution is insufficient to characterize service of a new 48-hour notice as an act to preserve the status quo. As will be discussed below, Freddie Mac could have, and did, file a motion in the Housing Court seeking reissuance of its execution to preserve the status quo or could have filed a motion seeking emergency relief from the automatic stay.

The Debtor also contends that Freddie Mac's filing of a motion in the Housing Court on April 6, 2017 seeking to have that court re-issue the execution on judgment for possession that included money damages violated the automatic stay. Because it appears that Freddie Mac would have been required to begin the eviction process again if its execution expired, *see generally* footnote 5 *supra*, filing a motion seeking reissuance of an execution for possession is an act to preserve the status quo and is not a per se violation of the automatic stay. This act should be considered in the context of other facts and circumstances that may be established at trial and could be evidence of an intent to revive financial pressures on Evans or coerce or harass her, rather than merely preserve the status quo. If evidence established such an intent, that could constitute a violation of the automatic stay and could be relevant to my determination of whether punitive damages could be appropriate.

**Conclusion**

For the reasons above, on the summary judgment record, I determine that service of the new 48-hour notice of intent to evict violated the automatic stay and will enter judgment on liability in favor of Evans. I have determined that Freddie Mac's filing of a motion in the Housing Court to re-issue an execution, to avoid the consequences of the execution expiring, was

---

J.); Yogel v. O'Connell, No. 93-SP-03568 (Boston Housing Ct. Oct. 31, 1994) (Daher, C.J.).

Catherine F. Downing, et. al., Termination of Residential Tenancies, TPM MA-CLE 11-1 (4th ed. 2022).

an act to preserve the status quo and did not violate the automatic stay. I will conduct a trial at which Evans may introduce evidence relating to the conduct of the constable and movers on April 6, 2017, and evidence of damages arising from service of the 48-hour notice after the constable had notice of her bankruptcy filing and any additional conduct of the constable and the movers that may be shown to violate the automatic stay. The Court will schedule a case management conference to discuss and schedule trial.

      An order will enter consistent with this Bench Ruling.

By the Court,

Dated: September 30, 2022

_____
Christopher J. Panos
United States Bankruptcy Judge